# United States Court of Appeals for the Federal Circuit

---

**RICHARD L. MILLER,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2017-1792

---

Petition for review of the Merit Systems Protection Board in No. DE-0831-14-0340-I-1.

---

Decided: September 10, 2018

---

DEBRA D'AGOSTINO, The Federal Practice Group Worldwide Service, Washington, DC, argued for petitioner.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

---

Before PROST, *Chief Judge,* SCHALL and CHEN, *Circuit Judges.*

SCHALL, *Circuit Judge.*

Appellant Richard L. Miller is retired. Prior to his retirement, he served in both the military and civilian sectors of the U.S. government. On appeal, he challenges the December 20, 2016 final decision of the Merit Systems Protection Board ("Board") that affirmed the March 28, 2014 reconsideration decision of the Office of Personnel Management ("OPM"). *Miller v. Office of Pers. Mgmt.*, No. DE-0831-14-0340-I-1, 2016 WL 7659226 (M.S.P.B. Dec. 20, 2016), ("*Final Decision*"). In its reconsideration decision, OPM determined the periods of Mr. Miller's government service that were "creditable" for purposes of calculating his civil service retirement annuity. Joint Appendix ("J.A.") 24.[1]

On appeal, Mr. Miller contends that the Board erred in affirming OPM's determination that he was not entitled to civilian service credit for three discrete time periods of his government service: June 21, 1982, to June 30, 1982 ("Period One"); August 27, 1990, to October 25, 1990 ("Period Two"); and August 22, 1994, to December 22, 1995 ("Period Three"). For the reasons set forth below, we hold that the Board erred in its decision with respect to Periods One and Two, but that it did not err in its decision with respect to Period Three. We therefore affirm-in-part, reverse-in-part, and remand.

---

[1]    As relevant to this appeal, creditable service is the total period of civil employment of an employee from the date of original employment to the date of separation on which title to an annuity is based in the civilian service of the government. 5 U.S.C. § 8332(a)–(b).

BACKGROUND

I. Statutory Framework

As the Board noted, Mr. Miller "has a complicated history of civilian and military service that began in 1970 and concluded in 2012." *Final Decision* at 1. That history implicates a particular statutory scheme.

The starting point is 5 U.S.C. § 8332. Section 8332(c)(1)(A) provides that "the service of an individual who first becomes an employee . . . before October 1, 1982, shall include credit for each period of military service performed before the date of the separation on which the entitlement to an annuity . . . is based . . . ."[2] This section, which covers Mr. Miller because he became an "employee" before October 1, 1982, thus allows credit for military service to count towards the calculation of a civil service retirement annuity. However, there are provisos to that allowance. They are spelled out in 5 U.S.C. § 8332(c)(2).

Section 8332(c)(2) is the critical statute in this case. In relevant part, it provides as follows:

If an employee . . . is awarded retired pay based on any period of military service, the service of the employee . . . *may not include credit for such period of military service unless the retired pay is awarded—*

(A) based on a service-connected disability—

    (i) incurred in combat with an enemy of the United States; or

---

[2] As relevant to this appeal, an "employee" is an individual who is appointed in the civil service, engaged in the performance of a Federal function, and subject to the supervision of an appointed individual. 5 U.S.C. §§ 8331(1), 2105.

> (ii) caused by an instrumentality of war and incurred in line of duty during a period of war as defined by section 1101 of title 38; or

(B) under chapter 1223 of title 10 (or under chapter 67 of that title as in effect before the effective date of the Reserve Officer Personnel Management Act).

(emphasis added). It is undisputed that the provisions of § 8332(c)(2)(A)–(B) do not apply to Mr. Miller.

To the extent that an annuitant who does not satisfy the requirements of § 8332(c)(2)(A)–(B) wishes to count military service towards civil service retirement, the annuitant must waive his or her military retired pay for that period and, in some circumstances, pay a deposit. 5 C.F.R. § 831.301(c). OPM's regulation at 5 C.F.R. § 831.301(a) tracks the statutory scheme.

With this statutory background in hand, we can turn to the facts of the case.

## II. Mr. Miller's Military and Civilian Service

As noted above, there are three periods of time at issue in this case.

### Period One (June 21, 1982–June 30, 1982)

During this period, the Department of Navy employed Mr. Miller as a civilian while he was on terminal leave from the U.S. Army. J.A. 108. Terminal leave is leave taken prior to discharge from the military and is statutorily defined as active duty service. *See* 10 U.S.C. § 701(e). It is undisputed that, as far as Period One is concerned, Mr. Miller was fully employed as a civilian. It also is undisputed that Mr. Miller received military retirement service credit for this period.

### Period Two (August 27, 1990–October 25, 1990)

During this period, Mr. Miller was on leave from his civilian employment at the Defense Intelligence Agency ("DIA") because he had been called up as a reservist to active duty with the U.S. Air Force.[3] It is undisputed that Mr. Miller received military retirement service credit for this period.

### Period Three (August 22, 1994–December 22, 1995)

During this period, Mr. Miller worked at DIA in a civilian position. However, in response to his request, the Air Force Board for Correction of Military Records ("AFBCMR") retroactively returned him to active military service for the period. J.A. 94. As a result, DIA voided his civilian service retroactively, placing him in military leave-without-pay status for this period. J.A. 106. As in the case of Periods One and Two above, Mr. Miller received military retirement service credit for this period. *See* J.A. 58. Mr. Miller does not assert that he made a deposit to OPM for this period or that he waived his military retirement pay for the period.

### III. OPM's Reconsideration Decision and Mr. Miller's Appeal to the Board

As noted, in its reconsideration decision, OPM determined that Periods One, Two, and Three did not constitute creditable service for purposes of calculating Mr. Miller's civil service retirement annuity. Mr. Miller timely appealed to the Board.

---

[3]      Throughout the proceedings in this matter, there has been a question as to whether, during this period, Mr. Miller was on annual leave or leave without pay from his position with DIA. The issue is addressed below in the section of Part IV of the DISCUSSION section of this opinion that covers Period Two.

In an initial decision, the administrative judge ("AJ") to whom the appeal was assigned reversed-in-part and remanded. J.A. 25. The AJ concluded first that, although Mr. Miller asserted that he had made a post-1956 deposit for Period One, Mr. Miller was not entitled to civilian service credit for the period because he had not established by a preponderance of the evidence that he had waived his military retirement pay for the period. According to the AJ, § 8332(c)(2) thus barred Mr. Miller from receiving civilian service credit for the overlapping periods of military and civilian service involved in Period One.[4] J.A. 30.

Regarding Period Two, the AJ found that Mr. Miller was in leave-without-pay status during this period. J.A. 31. Since Mr. Miller failed to establish by preponderant evidence that he was on annual leave during the period, the AJ determined that Mr. Miller had failed to establish that he was in civilian pay status. *Id.* Thus, the AJ concluded, Mr. Miller had failed to establish that Period Two constituted creditable civilian service pursuant to § 22A5.1-3(C) of OPM's *CSRS and FERS Handbook for Personnel and Payroll Offices* (1998) ("*Handbook*"). J.A. 30. Section 22A5.1-3(C) of the *Handbook* states, "If an employee first employed subject to CSRS before October 1, 1982, is on leave with pay (military leave), the period is creditable as civilian service. No military service deposit is payable." The AJ ruled that Mr. Miller was entitled to service credit towards his civil service retirement annuity if he was required to make, and did make, a deposit, as

---

[4]    n view of our disposition of this appeal, it is not necessary for us to decide the question of whether the statute and OPM's attendant regulation require *both* the payment of a deposit *and* an affirmative waiver of military retirement pay, or whether payment of a deposit in and of itself necessarily satisfies any waiver requirement.

provided by § 22A6.1-2(A) of the *Handbook*. J.A. 31. He ordered OPM to determine whether Mr. Miller was required to make a deposit and, if so, whether he did make such a deposit. *Id.*

Addressing Period Three and relying on § 22A6.1-4(A)–(B) of the *Handbook* (relating to retroactive reinstatement into military service with back pay and allowances), the AJ found that Mr. Miller was entitled to civilian service credit for this period because he should have been deemed on military leave with pay. Thus, reasoned the AJ, Mr. Miller should have received civilian instead of military service credit for the period. J.A. 32. OPM timely petitioned for review of the AJ's initial decision.

In its final decision, the Board let stand the AJ's ruling that Mr. Miller was not entitled to any civilian service retirement credit for Period One. *Final Decision* at 3 n.1. However, it reversed the AJ's decision with respect to Periods Two and Three. *Id.* at 5–10. It thus affirmed OPM's reconsideration decision.

Regarding Period Two, the Board did not disturb the AJ's finding that Mr. Miller was in leave-without-pay status during this period. However, it reversed the AJ's decision on the ground that the AJ's interpretation of the *Handbook* was contrary to the plain language of § 8332(c)(2), which the Board found "precludes the award of double credit for overlapping periods of civilian and military service, except under circumstances that do not appear to apply in this case." *Final Decision* at 6. The Board stated, "[T]he Handbook does not explain why the general prohibition against an individual receiving both civilian and military service credit for the same period, delineated in . . . the statute[,] . . . would not apply in a

situation like this." *Id.* at 6–7.[5]  The Board found that only if Mr. Miller had waived his military retirement service credit for the period could he have received civilian service credit for the period. *Id.*

Turning to Period Three, the Board found that Mr. Miller's military records had been corrected to reflect continuous military service. *Final Decision* at 7–8.  In addition, the Board found no proof that Mr. Miller had waived his military retirement credit for the period. Instead, it found that the evidence indicated that Mr. Miller had, in fact, received military retirement credit for the period. *Id.* at 9–10.  The Board thus held that Mr. Miller had not met his burden of proving entitlement to civil service retirement credit for Period Three. *Id.*

Mr. Miller has timely appealed the Board's final decision.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I. Standard of Review

We review the Board's decision to determine whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having

---

[5]  In *Eldredge v. Dep't of Interior*, 451 F.3d 1337, 1342 (Fed. Cir. 2006), involving a different statutory provision, we declined to accord the *Handbook* either *Chevron* or *Skidmore* deference.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Because the *Handbook* plays no part in our decision, it is not necessary for us to address the question of deference with respect to the *Handbook* provisions considered by the AJ and the Board in this case.

been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2012); *Miller v. Fed. Deposit Ins. Corp.*, 818 F.3d 1361, 1365 (Fed. Cir. 2016). "Under the substantial evidence standard, this court reverses the Board's decision only if it is not supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shapiro v. Soc. Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015) (internal quotation marks omitted). Before the Board, Mr. Miller bore the burden of establishing by a preponderance of the evidence that he is entitled to have Periods One, Two, and Three credited as civilian service for purposes of calculating his civil service retirement annuity. 5 C.F.R. § 1201.56(b)(2)(ii); *see also Muwwakkil v. Office of Pers. Mgmt.*, 18 F.3d 921, 927 (Fed. Cir. 1994) (Archer, J., dissenting).

## II. Contentions of the Parties

On appeal, Mr. Miller argues the Board erred in its reading of § 8332(c)(2). He contends that, by its terms, the statute does not prohibit him from receiving civilian service credit for civilian retirement purposes and military service credit for military retirement purposes for the same period of concurrent service. Instead, according to Mr. Miller, the statute "limits the application of military service credit to a civilian service credit computation." Miller Corrected Opening Br. at 11 (hereinafter cited as "Miller Br."). Mr. Miller states that he "is not seeking to apply his military service credit to his civilian service credit." *Id.* Instead, he claims he "seeks to be given proper credit for his civilian service time." *Id.* In other words, Mr. Miller interprets § 8332(c)(2) as prohibiting a civil service retiree from receiving double *civilian* service credit (i.e., for a period of concurrent service, receiving, in the calculation of a civil service retirement annuity, credit for both military and civilian service). Mr. Miller contends and reiterates throughout his briefing that he is claiming entitlement only to civilian credit for his civilian

service. *See* Miller Br. at 18 ("Mr. Miller is not attempting to count his military service credit toward his civilian service credit . . . . This does not present the double civilian service credit § 8332 prohibits.").

For its part, the government argues that the Board did not err in affirming OPM's reconsideration decision. According to the government, the Board's decision correctly "rests upon the unambiguous language of 5 U.S.C. § 8332." Gov. Br. at 12. Thus, the government agrees with the Board that § 8332(c)(2) "requires that an annuitant who receives military retired pay for a given period of time must both waive that pay and make a military service deposit to receive credit for that same period of time in his or her civil service annuity calculation." *Id.* Alternatively, the government contends that if we conclude that § 8332(c)(2) is ambiguous as to how credit for active duty military service while under civilian employment should be allocated, OPM's "reasonable construction" that prevents the double counting of such credit is entitled to deference under *Chevron*. *Id.* at 22.

Following oral argument, we asked the parties to respond to certain specific questions. In response to that request, Mr. Miller and the government each submitted supplemental submissions. Those submissions are referenced, respectively, as "Miller Suppl. Submission" and "Gov. Suppl. Submission."

### III. 5 U.S.C. § 8332(c)(2)

Before addressing each of the three time periods at issue, we must determine the correct construction of 5 U.S.C. § 8332(c)(2). The pertinent rules of statutory construction are well-settled. "Our review of questions of statutory interpretation is de novo, except to the extent deference to an agency's construction of a statute it administers is required under the two-step analysis set forth in *Chevron* . . . ." *NSK Ltd. v. United States*, 390 F.3d 1352, 1354 (Fed. Cir. 2004) (citing *Chevron, U.S.A., Inc. v.*

*Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)); *see also Vassallo v. Dep't of Def.*, 797 F.3d 1327, 1330 (Fed. Cir. 2015) (explaining that we generally review an agency's statutory interpretation using the two-pronged framework established by *Chevron*). The first prong of *Chevron* requires us to assess "whether Congress has directly spoken to the precise question at issue"; if so, we "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. If the statute does not answer the specific question at issue, however, meaning that it is "silent or ambiguous," then, under prong two of *Chevron*, we must determine whether the agency provided "a permissible construction of the statute." *Id.* at 843; *Hymas v. United States*, 810 F.3d 1312, 1318 (Fed. Cir. 2016). In a statutory construction analysis, the starting point is the plain language of the statute. *See Bennett v. Merit Sys. Prot. Bd.*, 635 F.3d 1215, 1218 (Fed. Cir. 2011) (quoting *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 472 (1977)). We agree with the parties that, in this case, the issue before us—the reach of 5 U.S.C. § 8332(c)(2)—is properly resolved based on the statutory language. Thus, it is not necessary for us to proceed to step two of the *Chevron* analysis.

As seen, in pertinent part § 8332(c)(2) provides as follows: "If an employee . . . is awarded retired pay based on any period of military service, the service of the employee . . . *may not include credit for such period of military service . . . .*" (Emphasis added.) In our view, by its plain terms, the bar of § 8332(c)(2) is directed to the situation in which a retired federal employee seeks to have his or her creditable civilian service "include credit for [a] period of military service" for purposes of the calculation of his or her civil service retirement annuity. In other words, the bar comes into play when a civil service annuitant seeks to increase his or her annuity by adding to his or her creditable civilian service military service time for which the annuitant is receiving military retirement pay. The

bar does not come into play when a civil service annuitant does not seek to "include credit for [a] period of military service" but, rather, only seeks credit for a period of civilian service for purposes of his or her annuity. We arrive at this conclusion based upon the words "the service of the employee . . . *may not include credit for such period of military service.*" (Emphasis added.) These words direct that it is military, not civilian, service that may not be included for purposes of the calculation of a civil service retirement annuity. *See Collins v. Office of Pers. Mgmt.*, 45 F.3d 1569, 1571 (Fed. Cir. 1995) (explaining that an annuitant is entitled to credit for active duty military service under both the CSRS and the Social Security System, but only if the annuitant makes a deposit with the Civil Service Retirement Fund); s*ee also Seltzer v. Office of Pers. Mgmt.*, 833 F.2d 975, 976 (Fed. Cir 1987) (noting that § 8332(c)(2) "precludes recipients of military retired pay from receiving civilian service credit for periods already credited toward their military retirement").

The Board's final decision reflects a different view of § 8332(c)(2). Addressing Period Two, the Board stated, "Section 8332(c)(2) precludes the award of double credit for overlapping periods of civilian and military service," except when the provisions of § 8332(c)(2)(A)–(B) apply. *Final Decision* at 6. In addition, in rejecting the AJ's reliance on the *Handbook* in connection with Period Two, the Board stated that "the *Handbook* does not explain why the general prohibition against an individual receiving both civilian and military service credit for the same period, delineated in . . . the statute[,] . . . would not apply in a situation like this." *Id.* at 6–7. As seen, however, we have concluded that the statute does not contain a "general prohibition against an individual receiving both civilian and military service credit for the same period," at least not in the situation where a person seeks civilian service credit for purposes of calculating his or her civil

service annuity based only on his or her civil service during that period. We thus hold that the Board approached Mr. Miller's appeal with an incorrect and overly broad view of the prohibition set forth in § 8332(c)(2). We turn now to the question of how the correct reading of the statute bears upon each of the three periods of time that are at issue in this case.

## IV. The Three Time Periods For Which Mr. Miller Seeks Civilian Service Credit

### Period One (June 21, 1982–June 30, 1982)

As noted, during this period, the Department of Navy employed Mr. Miller as a civilian while he was on terminal leave from the Army. J.A. 108. The general rule is that a federal agency may not employ an active duty member of the military in a civilian capacity. *See* 5 U.S.C. § 5536. However, pursuant to 5 U.S.C. § 5534a, a service member on terminal leave pending retirement from active duty service may accept civilian employment and receive both civilian and military pay. Section 5534a provides in pertinent part as follows:

> A member of a uniformed service who has performed active service and who is on terminal leave pending separation from, or release from active duty in, that service under honorable conditions may accept a civilian office or position in the Government of the United States, its territories or possessions, or the government of the District of Columbia, and he is entitled to receive the pay of that office or position in addition to pay and allowances from the uniformed service for the unexpired portion of the terminal leave. Such a member also is entitled to accrue annual leave with pay in the manner specified in section 6303(a) of this title for a retired member of a uniformed service.

It is undisputed that, as far as Period One is concerned, Mr. Miller was fully employed as a civilian. On that basis, Mr. Miller contends that he "is entitled to these seven days of civilian service credit regardless of any concurrent military service." Miller Br. at 25. In making that argument, he points to the language of § 5534a stating that a member of a uniformed service on terminal leave who accepts a civil office or position "is entitled to receive the pay of that office or position in addition to pay and allowances from the uniformed service for the unexpired portion of the terminal leave [and] also is entitled to accrue annual leave with pay in the manner specified in section 6303(a) of this title . . . ." *Id.* With regard to this period of concurrent service, Mr. Miller argues that he is not seeking to apply his military service credit to his civilian service credit. Rather, he urges, he is seeking credit only for his civilian service time. Thus the bar of § 8332(c)(2) is not applicable to him. Miller Br. at 11; Miller Reply Br. at 1. The government argues that because Mr. Miller failed to waive the military retired pay he received for this period of time, § 8332(c)(2) bars his claim. Gov. Br. at 30.

We agree with Mr. Miller that the bar of § 8332(c)(2) does not apply to his claim with regard to Period One. First, § 5534a, by expressly permitting a member of the military to receive pay for civilian service, suggests, by implication, that a member of the military is entitled to all benefits accruing from civilian service, including credit towards a civil service retirement annuity, when there is concurrent civilian service during a period of terminal leave. Second, § 8332(c)(2) is not directed to the situation of concurrent service, which is what we have in Period One. As concluded above, § 8332(c)(2) is directed to the situation in which an individual seeks to have military service time credited (or added) to existing civil service time in order to increase the period of civilian service for purposes of calculating a civil service retirement annuity.

It is not directed to the situation here, where Mr. Miller seeks credit only for civilian service during concurrent periods of civilian and military service under 5 U.S.C. § 5534a.

This result is consistent with *Seltzer v. Office of Personnel Management*. That case involved a claim by petitioner Richard L. Seltzer with respect to his civil service retirement. Seltzer earned civil service annuity credit for time spent as a civilian employee from January 30, 1964, until his retirement on August 30, 1974. 833 F.2d at 975. During that period of civilian employment, Seltzer spent a total of 71 days on annual leave while serving on active duty training as a reserve officer in the Army. Those 71 days were credited towards his civil service retirement. *Id.* Those 71 days also were credited towards his military retirement. *Id.* at 977.

On appeal, Seltzer argued that, under 5 U.S.C. § 8332(c)(1)(A), he was entitled to an additional 71 days of civilian service credit as "double credit . . . for concurrent periods of military and civilian service." *Id.* at 976. In support of this argument, Seltzer urged that, because he was retired under chapter 67 of title 10, he was entitled to this "double credit." *Id.* at 977. [6] The court rejected this argument. The court noted that retirement under chapter 67 would, "at most," entitle Seltzer to "71 days' credit toward his military retirement as well as 71 days' credit toward his civil service retirement." *Id.* It would not

---

[6]   As noted above, 5 U.S.C. § 8332(c)(2)(B) provides that if an employee is awarded retired pay based on any period of military service, the civil service of the employee may not include credit for such period of military service unless the retired pay is awarded under chapter 1223 of title 10 (or under chapter 67 of that title as in effect before the effective date of the Reserve Officer Personnel Management Act).

entitle him to the "142 days of civil service credit for 71 calendar days of [civilian] service" that he was seeking, the court stated. *Id.* The court further stated: "It should be emphasized that [Seltzer] has received credit toward his military retirement and credit toward his civil service retirement for the calendar periods involved." *Id.*

Thus, the fact that the court rejected Seltzer's chapter 67 argument did not disturb the fact that Seltzer already had been awarded credit towards his military retirement, as well as credit towards his civilian retirement, for 71 days of concurrent service. In other words, for concurrent military and civilian service, Seltzer received credit towards both his military and civilian retirement, which is what we hold Mr. Miller is entitled to receive for Period One.

### Period Two (August 27, 1990–October 25, 1990)

As noted, during this period, Mr. Miller was on leave from his civilian employment at DIA because he had been called up as a reservist on active duty with the Air Force.

In the initial briefing on appeal, Mr. Miller asserted that he was on annual leave during this period, that he received pay and benefits from DIA during this period, and that he paid civilian service credit contributions during this period. *See* Miller Br. at 18 (citing J.A. 100, 208–210). Mr. Miller asserted also that he received military retirement credit for this period. On that basis, he argued that he was entitled to 41 days of military retirement credit and 41 days of civil service retirement credit for Period Two. *Id.* In making this argument, he contended that § 8332(c)(2) does not bar his claim. *See* Miller Br. at 18–19, 21–24. As in the case of Period One, Mr. Miller argued that he is not attempting to count his military service towards his civilian service credit. Rather, he stated that he "seeks civilian service credit from this period of his civilian service when he was on annual leave. This does not present the double civilian service

credit § 8332 prohibits." Miller Br. at 18. For its part, the government, in its initial briefing, took the position that Mr. Miller was in leave-without-pay status during this period and thus made no civil service contributions, as found by the AJ and the Board. Gov. Br. at 31 & n.4, 27 & n.3. According to the government, Mr. Miller was not entitled to civilian service credit for Period Two because he failed to waive his military retired pay for this period or make a deposit pursuant to 5 U.S.C. §§ 8332(j) and 8334(j). Gov. Br. at 31.

In his supplemental submission, Mr. Miller points to a leave and earnings statement showing that he used, and DIA paid him for, 72 hours of annual leave during the pay period ending on September 8, 1990. *See* J.A. 210. He also points to a form titled "CERTIFIED SUMMARY OF FEDERAL SERVICE," certified by DIA, which contains the notation "Employee's military service began 08/27/1990; Employee's [leave without pay] began 10/26/90." J.A. 70. In its supplemental submission, the government does not challenge these records. *See* Gov. Suppl. Submission at 3.

As discussed in our analysis of § 8332(c)(2) and in connection with Period One, we do not think that the bar of 5 U.S.C. § 8332(c)(2) applies when there is concurrent military and civilian service, and the claimant only seeks civilian service credit for civilian service. The question of Period Two thus turns on whether there was concurrent service during the period. If there was concurrent service, for the reasons stated in our analysis of the statute and in the case of Period One, Mr. Miller is entitled to have Period Two credited in the calculation of his civil service retirement annuity. That brings us to a fact issue. If Mr. Miller was on annual leave during this period, he was in a concurrent service situation. If, however, he was in leave-without-pay status, he was not in a concurrent service situation. Indeed, at oral argument, counsel for Mr. Miller conceded that, if he was in leave-without-pay

status during Period Two, he loses as far as this period is concerned. Oral Arg. at 0:22:10–0:23:13, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 17-1792.mp3.

After considering the record, the parties' original briefing, and their supplemental submissions, we conclude that substantial evidence does not support the Board's finding that Mr. Miller was in leave-without-pay status during Period Two. Therefore, he was in a concurrent service situation, the result being that he is entitled to have Period Two credited as civilian service in the computation of his civil service retirement annuity. We are persuaded that this is the correct result based upon the evidence of record cited in the parties' supplemental submissions. Significantly, all of this evidence points to Mr. Miller being on annual leave during Period Two, while none of it supports the proposition that he was in leave-without-pay status. *See Lutz v. U.S. Postal Serv.*, 485 F.3d 1377, 1381 & n.3 (Fed. Cir. 2007) ("While the question . . . is a mixed question of law and fact, where, as here, the facts are undisputed[,] the determination . . . necessarily reduces to a question of law. . . . Thus, a remand . . . is not necessary.").

### Period Three (August 22, 1994–December 22, 1995)

As noted, during this period, Mr. Miller worked for DIA in a civilian position. However, in response to his request, the AFBCMR retroactively returned him to active service for the period. J.A. 94. As a result, DIA voided his civilian service retroactively, placing him in military leave-without-pay status for the period. J.A. 106. Mr. Miller was informed that "[i]nterim civilian earnings must be offset from pay and allowances due for the period of reinstatement." J.A. 170. As in the case of Periods One and Two, Mr. Miller received military retired pay for this period, *see* J.A. 58, and he does not assert that he made a

deposit to OPM for this period or that he waived his military retired pay for the period.

In his supplemental submission, Mr. Miller states, at page 2, that "[u]pon further review of the records and discussion, the parties agree that the military did credit Mr. Miller with the time, in a day for day manner, for his constructive active duty from August 22, 1994, to December 22, 1995." In its supplemental submission, the government points out that Period Three is distinguishable from Periods One and Two. That is because, unlike Periods One and Two, Period Three does not involve periods of overlapping military and civilian service. The government states: "When the AFBCMR retroactively reinstated Mr. Miller to active duty to 1994, [DIA], his civilian employer at the time, voided all civilian service for this period." Gov. Suppl. Submission at 4–5. In other words, Period Three does not involve concurrent service. Because Mr. Miller is deemed to have had no civilian service during Period Three and because he has not made a deposit or waived his military retirement pay for this period, § 8332(c)(2) bars his claim for the period.

## CONCLUSION

In sum, we hold that the Board erred in rejecting Mr. Miller's claims with respect to Periods One and Two. We also hold, however, that the Board did not err in rejecting his claim with respect to Period Three. We thus affirm-in-part and reverse-in-part. The case is remanded to the Board for further proceedings consistent with this opinion. In that regard, the Board is directed to remand the matter to OPM for calculation of the civil service retirement annuity to which Mr. Miller is entitled based upon our decision in this case. The Board may retain jurisdiction while OPM makes its calculation. *See Erreich v. U.S. Postal Serv.*, 28 M.S.P.R. 232, 233 (1985) ("[T]he Board . . . retains jurisdiction to enforce any final decision.").

## AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

### Costs

The parties shall bear their own costs.